J-S81013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELEAZAR YISRAEL | : | |
| | : | |
| Appellant | : | No. 703 MDA 2017 |

Appeal from the Judgment of Sentence December 13, 2016
In the Court of Common Pleas of Luzerne County
Criminal Division at No(s):  CP-40-CR-0003750-2015

BEFORE:   PANELLA, J., STABILE, J., and PLATT\*, J.

MEMORANDUM BY PANELLA, J.                    **FILED APRIL 24, 2018**

Eleazar Yisrael appeals from the judgment of sentence entered in the Luzerne County Court of Common Pleas. On appeal, he challenges the sufficiency of the evidence supporting his convictions. We affirm.

The testimony presented at trial established the following. In the early morning hours of August 31, 2015, Butler County Police encountered Appellant, in camouflage-patterned clothing, walking alongside South Old Turnpike Road towards Drums. The police stopped Appellant to perform a safety check, but ultimately allowed Appellant to continue walking alongside the road.

Later that day, police responded to a report by Lisa Vacante that her estranged husband, Samuel Vacante, had gone missing from his home in

_____

\* Retired Senior Judge assigned to the Superior Court.

Drums. Vacante's home was located approximately two miles from the point police had encountered Appellant earlier that day.

Upon arriving at Vacante's home, police officers discovered Vacante's white Kia Cadenza missing from his garage. The garage contained the distinct smell of bleach. Vacante's son, Brandon Vacante, led the officers to a trail of blood, and various items including a grey hooded sweatshirt, rags soaked in bleach, Clorox toilet bowl cleaner, a blue latex glove, a .22 caliber rifle, and a fired .22 caliber shell casing. Brandon informed the officers that he had been receiving disturbing text messages from Vacante's cell phone, and noted that it was unusual for Vacante to store either clothing or the rifle in the garage. The police were able to track down Vacante's phone, but did not find Vacante or his vehicle nearby.

Two days later, officers discovered Vacante's vehicle two blocks from the home Appellant shared with girlfriend Lisa, Vacante's estranged wife. The registration plate had been removed and the vehicle identification number ("VIN") blacked out. Officers discovered Vacante's blood in the trunk, Appellant's fingerprints in the vehicle, and a Wal-Mart receipt dated September 1, 2015, the day after Vacante went missing.

Wilson Rosembert testified that Appellant had picked him up in the white Kia on September 1, 2015, and confirmed that they made a trip to Wal-Mart on that date. Security footage confirmed that Appellant, still dressed in the camouflage, had driven Vacante's vehicle. Further, shortly after Vacante's disappearance, Jamal Reid claimed that Appellant had asked him to store a

white Kia, and various other items, in Reid's garage. While Reid did not allow Appellant to store the vehicle in his garage, he allowed Appellant to store other items, including two knives, in the garage. The police later identified the knives as Vacante's personal property.

Police executed a search warrant on Appellant's residence on September 3, 2015. They recovered various items identified as Vacante's, including: a gun, binoculars, ammunition, tools, watches, mail, a compact disc made for Vacante by his girlfriend, and the key fob for his Kia Cadenza. Further, police seized a box of blue latex gloves, similar to the glove found in Vacante's garage.

Two days later, a passerby discovered Vacante's body in a wooded area of Penn Forest Township. Appellant previously resided in this area. Vacante's body was found wrapped in a tent in an advanced stage of decomposition. The tent was identified as one Vacante had stored in his garage. The autopsy revealed that Vacante's cause of death was a small caliber gunshot wound to the back. While the Commonwealth was not able to definitely prove that the gun recovered from the Vacante's garage caused his death, it was not ruled out as the murder weapon.

Appellant was arrested and charged with criminal homicide, robbery, burglary, tampering with or fabricating physical evidence, and abuse of corpse. When speaking to police, Appellant originally claimed that he was in New York the day Vacante went missing. However, the man Appellant claimed he was with in New York denied seeing Appellant on that day.

The case proceeded to a jury trial and the jury ultimately convicted Appellant of all charges. The trial court immediately sentenced Appellant to the mandatory term of life imprisonment for his first-degree murder conviction, as well as an aggregate consecutive sentence of 14½ to 29 years for his other convictions. Appellant filed a post-sentence motion challenging the sufficiency of the evidence presented at trial. The trial court denied Appellant's motion. This appeal follows.

On appeal, Appellant contends that the Commonwealth presented insufficient evidence to support each of his five convictions. Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. *See Commonwealth v. Dale*, 836 A.2d 150, 152 (Pa. Super. 2003).

"[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa. Super. 2007) (citation omitted). Any doubt raised as to the accused's guilt is to be resolved by the fact-finder. *See Commonwealth v. Kinney*, 863 A.2d 581, 584 (Pa. Super. 2004) (citation omitted). "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." *Id*. (citation omitted). Therefore, we will not disturb the verdict "unless the evidence is so weak and inconclusive that as a

matter of law no probability of fact may be drawn from the combined circumstances." **Bruce**, 916 A.2d at 661 (citation omitted). Evidence is weak and inconclusive "[w]hen two equally reasonable and mutually inconsistent inferences can be drawn from the same set of circumstances…." **Commonwealth v. Woong Knee New**, 47 A.2d 450, 468 (Pa. 1946). However, "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." **Commonwealth v. Gibbs**, 981 A.2d 274, 281 (Pa. Super. 2009) (citations omitted).

First, Appellant challenges the sufficiency of the evidence underlying his first-degree murder conviction. "An individual commits first-degree murder when he intentionally kills another human being; an intentional killing is defined as a willful, deliberate and premeditated killing." **Commonwealth v. Williams**, 176 A.3d 298, 306 (Pa. Super. 2017) (citing 18 Pa.C.S.A. §§ 2501, 2502(a), (d)) (internal quotation marks omitted). "To sustain a conviction for first-degree murder, the Commonwealth must establish beyond a reasonable doubt that: (1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and the specific intent to kill." **Commonwealth v. Cash**, 137 A.3d 1262, 1269 (Pa. 2016) (citation omitted). "[T]he jury, as a factfinder, may infer that the accused intended to kill a victim based on the accused's use of a deadly weapon on a vital part of the victim's body." **Commonwealth v. Sanchez**, 36 A.3d 24, 37 (Pa. 2011) (citation omitted).

Appellant's arguments center around his claims that the Commonwealth failed to link him, either through DNA evidence or otherwise, to the crime scene and the murder weapon. As such, Appellant assails the second prong required to support his first-degree murder conviction: he contends that the Commonwealth failed to present evidence sufficient to prove that he was responsible for Vacante's death.[1]

At trial, the Commonwealth presented evidence that at the time of Vacante's death, Appellant was involved in a relationship with Vacante's estranged wife Lisa. Police officers observed Appellant walking in the direction of Vacante's residence the same day that Vacante went missing. When Vacante was reported missing, police found a trail of Vacante's blood in the garage and Vacante's vehicle missing. Rosembert informed the jury that Appellant picked him up in Vacante's vehicle the day after Vacante went missing, and Reid testified that Appellant wanted to store Vacante's vehicle in his garage. When the police recovered Vacante's vehicle, both Vacante's blood and Appellant's fingerprints were discovered inside the vehicle. Vacante's body was found in close proximity to Appellant's previous residence, and Appellant's alibi for the day Vacante disappeared was unsupported.

_____

[1] In his appellate brief, Appellant briefly references the Commonwealth's failure to prove specific intent, *i.e.*, the third prong of the first-degree murder sufficiency analysis. **See** Appellant's Brief, at 8. While we could easily find this argument waived for Appellant's failure to adequately develop this argument, **see** Pa.R.A.P. No. 2119(b), (c), Appellant has waived this argument for failure to include a challenge to this specific element in his Rule 1925(b) statement. **See Commonwealth v. Tyack**, 128 A.3d 254, 261.

While much of the evidence of Appellant's participation in this crime was circumstantial, we reiterate that "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." **Gibbs**, 981 A.2d at 281(citations omitted). Here, the circumstantial evidence, when viewed in the light most favorable to the Commonwealth, supported the Commonwealth's theory that Appellant walked to Vacante's house, committed the murder, placed Vacante's body in the trunk of Vacante's car, and drove Vacante's car, with his body in the trunk, to the wooded area and dumped it there.

Further, the jury, as the ultimate finder in fact, was permitted to resolve any doubt as to Appellant's guilt. **See Kinney**, 863 A.2d at 584. In finding Appellant guilty of first-degree murder, the jury clearly found the Commonwealth's theory credible. **See id**. As the evidence supported the jury's inference of Appellant's guilt, and the first-degree murder conviction, Appellant is not entitled to relief on his first claim.

Next, Appellant claims that the Commonwealth presented insufficient evidence to sustain his burglary conviction. Specifically, Appellant reiterates his claim that the Commonwealth failed to prove he was present at Vacante's home on the day of his disappearance. As such, Appellant claims that the only proof of burglary the Commonwealth had were Vacante's personal items discovered in Appellant's residence, which, Appellant asserts, is insufficient to support a burglary conviction.

"To sustain a burglary conviction, the Commonwealth is required to prove beyond a reasonable doubt that the offender entered the premises with the contemporaneous intent of committing a crime therein, at a time when he or she was not licensed or privileged to enter." ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1078 (Pa. 2017) (citation and internal quotation marks omitted). Appellant does not challenge the Commonwealth's proof of his intent, but simply challenges the evidence regarding his presence in the garage.[2]

Here, the Commonwealth provided sufficient circumstantial evidence from which the jury could infer that Appellant entered Vacante's garage. Appellant was observed walking towards Vacante's home the day Vacante went missing, and most importantly, Appellant was found in possession of various items Vacante kept in his home and garage, including Vacante's vehicle. Thus, we find that the Commonwealth provided sufficient circumstantial evidence from which the jury could infer Appellant entered Vacante's home. ***See Gibbs***, 981 A.2d at 281. Therefore, Appellant's challenge to the sufficiency of the evidence underlying his burglary conviction, fails.

---

[2] In his Rule 1925(b) statement, Appellant argued that the Commonwealth failed to prove his intent to commit Criminal Homicide or Robbery upon entering Vacante's home. ***See*** Rule 1925(b) Statement, 6/1/17, at ¶ 2(a). However, Appellant's wholly abandons this argument in his appellate brief. ***See*** Appellant's Brief, at 9.

Moving to his third sufficiency argument, Appellant challenges his robbery conviction. Appellant centers his argument around his belief that the Commonwealth's evidence was insufficient to prove that he inflicted injury upon Vacante, or that he committed a theft. To sustain a conviction for robbery, as charged in this case, the Commonwealth must prove beyond a reasonable doubt that a person inflicted serious bodily injury upon another person in the course of committing a theft. *See* 18 Pa.C.S.A. 3701(a)(1)(i).

As discussed above, the Commonwealth presented sufficient evidence for the jury to conclude that Appellant killed Vacante. Murder is undoubtedly subsumed in the definition of serious bodily injury. Additionally, the Commonwealth presented evidence that Appellant was found in possession of several items of Vacante's property, including his mail, knives, watches, and vehicle. Logically, the jury could infer from this evidence that Appellant stole the items from Vacante in the process of killing him. *See Kinney*, 863 A.2d at 584 (providing jury is permitted to resolve any doubt as to defendant's guilt). Appellant's attack on the sufficiency of the evidence supporting his robbery conviction, fails.

Appellant next challenges the sufficiency of the evidence supporting his tampering with or fabricating physical evidence conviction. Specifically, Appellant claims that the Commonwealth was unable to prove Appellant was aware of a police investigation at the time they claimed he tampered with evidence.

To establish the offense of tampering with evidence, the Commonwealth must prove three interrelated elements: (1) the defendant knew that an official proceeding or investigation was pending; (2) the defendant altered, destroyed, concealed, or removed an item; and (3) the defendant did so with the intent to impair the verity or availability of the item to the proceeding or investigation.

*Commonwealth v. Jones*, 904 A.2d 24, 26 (Pa. Super. 2006) (citation omitted).

The Commonwealth presented evidence that the police immediately started looking for Vacante's vehicle once they determined he was missing on August 31, 2015. Appellant resided with Vacante's estranged wife, Lisa, who was aware on that same day that both Vacante and his vehicle were missing. Appellant was found in possession of Vacante's vehicle two days later, with the registration plate removed and the VIN blacked out.

Based upon the totality of the circumstances, a jury could have reasonably inferred that Appellant knew the police were investigating Vacante's disappearance as early as August 31, 2015. *See Kinney*, 863 A.2d at 584 (providing jury is permitted to resolve any doubt as to defendant's guilt). The jury could have also reasonably inferred that, knowing a police investigation was occurring, Appellant decided to remove the registration plate and black out the Kia's VIN in an attempt to conceal his involvement in Vacante's disappearance. *See id*.

When viewed in a light most favorable to the Commonwealth as verdict winner, the evidence presented at trial regarding Appellant's tampering with or fabricating physical evidence charge was sufficient to establish that

Appellant believed an investigation was about to be instituted. Accordingly, we find Appellant's fourth challenge to the sufficiency of the evidence fails.

Finally, Appellant assails the Commonwealth's evidence underlying his abuse of corpse conviction. Appellant once again relies on the lack of physical evidence tying him to Vacante's body to dispute his conviction. However, in employing this strategy, Appellant ignores the other elements in the abuse of corpse statute that requires the Commonwealth prove a person treated a "corpse in any way that he knows would outrage ordinary family sensibilities." 18 Pa.C.S.A. § 5510. As we have already held, numerous times, that the Commonwealth's circumstantial evidence was sufficient for the jury to conclude Appellant murdered Vacante, and disposed of his body, Appellant's claim that the evidence was insufficient to tie him to Vacante's body fails. Appellant's final challenge to the sufficiency of the evidence does not merit relief.

Judgment of sentence affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/24/18

- 11 -